FILED
2016 Sep-27  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES MARK GOOLSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-0501-JHE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Charles M. Goolsby seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). Goolsby timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Goolsby filed his application for DIB in July 2012, alleging he became disabled on February 14, 2012, due to neck and shoulder pain, severe migraines that cause vomiting, and dehydration.  (Tr. 191).  He was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education.  (Tr. 5).  His past work experiences include employment as an automotive system diagnostic technician.  (*Id.*).  The

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 9).

Agency initially denied Goolsby's application, and he requested a hearing where he appeared in October 2013.  (Tr. 48-77).  After the hearing, the Administrative Law Judge ("ALJ") denied Goolsby's claim on December 13, 2013.  (Tr. 28-47).  Goolsby sought review by the Appeals Council, but it declined his request on January 22, 2015.  (Tr. 13-17).  On that date, the ALJ's decision became the final decision of the Commissioner.  On March 26, 2015, Goolsby initiated this action.  (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Goolsby meets the nondisability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. 33). She further determined Goolsby has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) At Step Two, the ALJ found Goolsby has the following severe impairments: post-cervical fusion and migraines. (*Id.*). The ALJ also considered Goolsby's claims of confusion, depression, and memory issues and found them to be nonsevere. (*Id.* at 34-35). At Step Three, the ALJ found Goolsby did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35).

Before proceeding to Step Four, the ALJ determined Goolsby's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through his date last insured, Goolsby had the RFC to perform light work as defined in 20 C.F.R. 404.1567(c) except

[L]ight work as defined in 20 CFR 404.1567(b) except the claimant may frequently balance, stoop, kneel, crouch, and climb ramps and stairs; may occasionally crawl; and may never climb ladders, ropes, or scaffolds. He is able to occasionally reach overhead with the right upper extremity. The claimant must avoid concentrated exposure to extreme cold and vibration and must avoid hazards. He must work in an environment with a "moderate noise intensity level" or quieter as the Selected Characteristics of Occupations defines that term, which gives examples of light traffic, a grocery store, or a department store. He is able to work in settings with levels of illumination similar to that found in a typical office setting but may not work in sustained and direct sunlight. While all competitive employment has production requirements, he should work in an environment that does not have stringent production or speed requirements and thus may not perform fast-paced assembly line work, quota-based work, or piece rate work.

(Tr. at 36-37.)

According to the ALJ, Goolsby is unable to perform any of his past relevant work, he is a "younger individual," and he has a "high school education," as those terms are defined by the regulations. (Tr. 41). She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*). Because Plaintiff's ability to perform the full range of light work has been impeded by additional limitations, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 201.25 as a guideline for finding there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as counter clerk, inspector, and information clerk. (Tr. 42). The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 14, 2012, through the date of this decision." (*Id.*).

## V. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence

in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## VI. Discussion

Although the Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The Court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Goolsby failed to demonstrate a disability.  Goolsby alleges the ALJ's decision should be reversed and remanded for two reasons. First, he believes the ALJ failed to properly consider his treating physician's opinions. (Doc. 11 at 5).  Second, he contends the ALJ's RFC findings were not based on substantial evidence because she failed to fully develop the record.  (Doc. 11 at 8-11).

### A.   The ALJ Did Not Err in Considering Goolsby's Treating Physician Diagnoses

Goolsby argues the ALJ erroneously accorded too little weight to two Physical Capacities Evaluations submitted by his treating physician, Dr. William Howell.  (Doc. 11 at 6).   A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the

medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists

for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating

physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary

finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125

F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that

"good cause" existed where the opinion was contradicted by other notations in the physician's

own record).

  Dr. Howell issued his first opinion on November 26, 2012, consisting of a Physical

Capacities Examination ("PCE") and a Clinical Assessment of Pain ("Pain Form").  (Tr. 514-18).

In the PCE, Dr. Howell indicated Goolsby could lift 50 pounds occasionally and 25 pounds

frequently; sit for a total of five hours; stand and/or walk for four hours; frequently push, pull,

climb, manipulate, bend, stoop, and reach; and operate motor vehicles and work around hazards.

(Tr. 514).  Dr. Howell also stated Goolsby could not work around dust, allergens, fumes, and the

like.  (*Id.*).  On the Pain Form, Dr. Howell indicated Goolsby's pain was present, intractable, and

incapacitating, and physical activity would cause some increase in the pain but "not to such an

extent as to prevent adequate functioning in such tasks."  (Tr. 515).  Finally, Dr. Howell

characterized the side effects of the prescribed medication as totally restricting Goolsby to the

extent that he would be unable to function at a productive level of work.  (Tr. 516).   The ALJ

gave some, but not great, weight to this opinion.  (Tr. 40).  In particular, the ALJ found Dr.

Howell's assessment of the limitations imposed by Goolsby's medication to be inconsistent with

Goolsby's own testimony that the medication caused no side effects that he was aware of.  (Tr.

40, 59).  The ALJ found the opinion to be otherwise consistent with the record as a whole.  (Tr. 40).

On September 27, 2013, Dr. Howell issued a second PCE and Pain Form.  (Tr. 687-691). This time, Dr. Howell indicated Goolsby could lift 10 pounds occasionally; sit four hours; stand and/or walk for two hours; occasionally push, pull, and manipulate; and never climb, bend, stoop, or reach.  (Tr. 687).  In contrast to the previous PCE, Dr. Howell stated Goolsby could not operate motor vehicles or work around hazardous machinery, but could work around dust, allergens, fumes, and the like.  (*Id.*).  On the second Pain Form, Dr. Howell again indicated that Goolsby's pain was present, intractable, and incapacitating, but this time stated physical activity would cause an "[i]ncrease of pain to such an extent that bedrest and/or medication is necessary." (Tr. 688).  Dr. Howell indicated the side effects of the prescribed medication would be severe and limit Goolsby's effectiveness due to distraction, inattention, drowsiness, etc.  (*Id.*).  The ALJ assigned little weight to this opinion.  (Tr. 40-41).  She found it conflicted with Dr. Howell's treatment notes between November 2012 and September 2013 and with the prior opinion.  (*Id.*). While Goolsby had continued to complain of headaches and neck pain, the ALJ found during this period Goolsby had expressed that his pain was managed better and his pain medication was renewed.  (*Id.*).

Goolsby takes issue with the ALJ's decision to assign "some but not great weight" to the first report because of the inconsistency between Dr. Howell's description of the "severe" side effects of the medication and Goolsby's testimony the medications did not cause side effects. (Doc. 11 at 7).  Goolsby argues he in fact did testify to side effects from the medication, noting he stated he did not take pain medication before the hearing because he wanted to be "clear." (*Id.*).  However, when questioned directly by the ALJ as to whether he had side effects from his

9

medication, Goolsby responded he was not aware of any.  (Tr. 59).  At the very least, Goolsby's testimony regarding side effects was internally contradictory, and thus necessarily inconsistent with Dr. Howell's conclusions.  The ALJ had good cause to afford Dr. Howell's first opinion less than controlling weight on this basis.

Goolsby also argues the ALJ's decision to give "little weight" to Dr. Howell's second report is problematic in light of her decision to give "some weight" to the first report, as both reports indicate Goolsby's pain is "present and found to be intractable and virtually incapacitating."  (Doc. 11 at 7).  Goolsby characterizes the reports as more similar than they in fact are.  Dr. Howell cited very different implications for this pain on Goolsby's physical activity; in the first report, the pain would "not [. . .] prevent adequate functioning in such tasks," while in the second report physical activity would cause an "[i]ncrease of pain to such an extent that bedrest and/or medication is necessary."  (Tr. 551 & 668).  Additionally, the ALJ based her decision to assign less weight to the second report on a significant decrease in Dr. Howell's assessment of Goolsby's functional abilities not supported by Dr. Howell's treatment records.  (Tr. 40-41).  Goolsby had continued to complain of headaches between the date of the first report and the second report, but he had also reported to Dr. Howell pain medication allowed him to manage his headaches better.  (Tr. 41).  The ALJ noted the absence of any objective findings that accounted for Dr. Howell's decision to drastically reduce his assessment of Goolsby's physical capabilities; Dr. Howell had previously found Goolsby had a decreased range of motion, but this finding predated the first opinion.  (*Id.*).  The inconsistencies between Dr. Howell's second report and his treatment notes constituted good cause for the ALJ to assign little weight to his report.

**B.  The ALJ's RFC Finding Was Supported by Substantial Evidence**

Goolsby contends the ALJ's RFC finding was not based on substantial evidence for two reasons. First, he claims the ALJ did not adequately develop the record to resolve conflicts between Dr. Howell's first opinion and his second. (Doc. 11 at 8). Second, Goolsby contends the ALJ failed to fully develop the claim's mental component. (*Id.* at 10). "It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (internal citations omitted).

First, the ALJ had no duty to re-contact Dr. Howell to justify Goolsby's functional capacity decrease between his first and his second opinion. Where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson*, *v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Here, as discussed above, there was good cause to discount the second opinion, and there was no other indication in the record of a drop in Goolsby's physical function between the dates of the two opinions that would necessitate re-contacting Dr. Howell. The ALJ's decision to assign greater weight to the first report, which was consistent with the record, and less weight to the second report, which was inconsistent with the record, was not error.

Second, Goolsby contends the claim contained a mental component—his episodes of confusion, memory deficits, and depression—that required further development and incorporation into the RFC. (Doc. 11 at 10). Even if nonsevere, Goolsby claims, these mental conditions should have been assessed in determining his RFC. (*Id.*). Goolsby argues the ALJ should have ordered a neurological or neuropsychological consultative examination to develop this component. (Doc. 11 at 9). An ALJ's responsibility to develop the record cannot require the

ALJ to order a consultative examination on an issue until "the plaintiff has satisfied his or her burden to provide objective evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Bryant v. Barnhart*, 36 F. App'x 405, 407 (10th Cir. 2002) (internal quotation marks omitted). "[T]he ALJ is not required to order an examination if it is not necessary to enable the ALJ to make a disability determination." *Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006).

The ALJ considered Goolsby's confusion at Step Two and determined it to be nonsevere. (Tr. 34). The only episode of Goolsby's confusion contained in the record occurred on March 6, 2012, when Goolsby was treated by Dr. Howell for confusion and blackouts. (Tr. 528). The next day, he went to the hospital with symptoms of confusion, fever, abdominal pain, and nausea. (Tr. at 395). He was diagnosed with pneumonia and anemia. (Tr. 34, 411). Goolsby was treated and discharged, and the record does not reflect that he received any further treatment for these issues. (Tr. 34). The ALJ concluded that the confusion was nonsevere because it had "not caused more than a minimal limitation in Goolsby's ability to carry out basic work activities for a continuous period of 12 months or more during the relevant time frame." (*Id.*). This was sufficient evidence for the ALJ to make an informed determination, and Goolsby has simply not met his burden to come forward with evidence that his confusion constitutes a severe impairment. The ALJ was not obligated to seek additional evidence of Goolsby's confusion when the record reflected a single instance linked to nonrecurring conditions for which Goolsby received no ongoing treatment, and Goolsby does not argue precisely how such an isolated instance of confusion would diminish his RFC.

The ALJ also found at Step Two Goolsby's depression was nonsevere. (Tr. 34-35). Goolsby never sought treatment for depression beyond the medication provided by Dr. Howell.

(Tr. 34).  The record reflects Goolsby had a single significant episode of depression in August 2013, after which Dr. Howell prescribed Seroquel.  (Tr. 60-61, 625).  Goolsby stated he experienced no other episodes of depression since and "[t]he Seroquel seems to be working pretty well."  (Tr. 61).  A condition that is controlled by medication may not be a substantial limitation for purposes of a claimant's RFC.  *King v. Comm'r, Soc. Sec. Admin.,* 550 F. App'x 781, 783 (11th Cir. 2013).  Goolsby argues because he was diagnosed with depression in August 2013 and was "suicidal and secluded by his mother" at the time of his diagnosis, he would be a "poor fit" for the jobs of counter clerk and information clerk, which were identified by the vocational expert at his hearing as jobs a hypothetical person with Goolsby's RFC could perform.  (Doc. 11 at 10).  However, he completely fails to account for his lack of such symptoms when medicated.  The ALJ did not err by declining to incorporate Goolsby's depression in his RFC.

Goolsby argues the ALJ failed to account for Goolsby's memory deficits in either her severe or non-severe findings.  (Doc. 11 at 9).  Goolsby points to the ALJ's decision to assign partial weight to a state agency reviewing physician's opinion because it did not take into account Goolsby's migraines or memory deficits and claims that the ALJ made an "unenumerated finding of memory deficits as an impairment, whether severe, non severe, or at least medically determinable."  (*Id.* at 9-10).  Goolsby states the record should have been developed further to analyze the mental component of his memory issues.  (*Id.*).

Here, Goolsby misreads the ALJ's opinion as reflecting a discrete and undeveloped mental impairment of memory deficits, when in fact the ALJ considered Goolsby's memory issues at Step Two and determined them to be a component of Goolsby's migraines, a physical impairment.  (Tr. 35).  Goolsby's own references to his memory deficits attributed them to his

headaches.  At his hearing, Goolsby stated "[a]nd one other thing with these headaches and stuff [. . .] I've lost—my memory's not so well anymore.  I can't remember things and I forget things[.]"  (Tr. 61).  Goolsby's only other reference to memory issues at his hearing came in his response to a question about the date of a clinic visit: "No, unfortunately, my memory's not so well [. . .] I'm sorry, my memory's just not so good.  These headaches have just wiped me out."  (Tr. 65).  On his Function Report dated August 14, 2012, Goolsby checked a box indicating memory impairment and described it by stating "memory – severe headache affects."  (Tr. 220).  The ALJ concluded Goolsby's memory problems were attributable to his headaches rather than to a mental issue.  (Tr. 35).  Given this, it is a stretch to read the ALJ's statement regarding the state agency physician's failure to take into account Goolsby's memory deficits as anything more than an expansion of "chronic migraines" rather than an acknowledgement of a separate impairment, mental or physical.  There was no need for the ALJ to develop the record further by attempting to diagnose a mental component to Goolsby's memory problems when the evidence in the record, including testimony by Goolsby, uniformly indicates it was attributable to a physical impairment.

Further, the ALJ in fact took Goolsby's migraines into account when she determined his RFC.  To the state agency physician's determination that Goolsby was restricted to light work, the ALJ imposed the additional restrictions of avoiding vibration and working in an environment without sustained and direct sunlight, with "moderate noise intensity" or quieter, and that does not have "stringent production or speed requirements."  (Tr. 36).  Goolsby acknowledges the ALJ's restrictions on light, vibration, and noise were added due to his migraines.  (Doc. 11 at 9).

Finally, Goolsby briefly suggests the ALJ should have considered the confusion, depression, and memory deficits in combination as part of an "increasing mental overlay" to the

claim.  (Doc. 11 at 10).  Goolsby is correct that an ALJ is required to consider a claimant's impairments in combination rather than isolation.  *See Reeves v. Heckler,* 734 F.2d 519, 525 (11th Cir. 1984) (quoting *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir.1980)).  However, Goolsby does not argue—and the record does not reflect—the impairments combined among themselves or with any others in any meaningful way.  By Goolsby's own admission, his depression was controlled with Seroquel, and Goolsby had a single episode of confusion.  To the extent Goolsby suggests memory deficits combine with his other impairments, as noted above, the ALJ considered Goolsby's memory issues to be a component of his migraines, and Goolsby does not argue the ALJ failed to consider his migraines in combination with his other impairments.

There was enough evidence in the record concerning Goolsby's mental impairments for the ALJ to make an informed decision; thus, there was no need to further develop the record by re-contacting Goolsby's treating physician or by ordering a CE. *See Wilson v. Apfel*, 179 F.3d at 1277-78.  The ALJ's RFC findings with respect to depression, confusion, and memory deficits were supported by substantial evidence.

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Goolsby's claim for a period of disability and DIB is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

DONE this 27th day of September, 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE